Amy L Martz #16508
MARTZ LAW
1682 West Reunion Avenue, 4A&B
South Jordan, UT 84095
AmyLMartz@protonmail.com
(801) 231-0286
*Attorney for Petitioner*

IN THE UNITED STATES DISTRICT COURT
THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| Dennis & Sarah George for and on behalf of minor child, Student, *Petitioners* | **COMPLAINT** |
| | JURY DEMAND |
| v. | Civil No. |
| Davis School District, *Respondent* | Judge: |

COMES NOW Petitioners, Dennis and Sarah George individually and on behalf of minor child, Student, by and through legal counsel Amy L Martz of Martz Law, LLC and hereby complains against Defendant Davis School District as follows:

**TABLE OF CONTENTS**

A.  Jurisdiction and Venue…………………………………………………………4

B.  Summary…………………………………………………………………………6

C.  Argument………………………………………………………………………16

D.  First Cause of Action (504) …………………………………………………17

E.  Second Cause of Action (ADA) …….………………………………………19

F.  Third Cause of Action (CRA §1983)……….………………………………23

G.  Fourth Cause of Action (CRA 1964)…………… ………………..…………27

H.  Fifth Cause of Action (Utah State Constitution) ………………………………28

I.  Sixth Cause of Action (NIED, IIED)…………………………….......…………32

J.  Jury Demand....…………………………………………….…………….. 36

K.  Prayer for Relief………………………………………………………. 36

**TABLE OF AUTHORITIES**

*Doe v. Taylor Independent School Dist.*, 975 F.2d 137 (5th Cir. 1992)………………..23

*Gonzales v. Ysleta Independent School District,* 996 F.2d 745 (5th Circuit 1993)……23

*Pearson v. Callahan*, 494 F.3d 891 (10th Cir. 2009)………………………………………25

*Saucier v. Katz*, 533 U.S. 194 (2001) ……………………………………………………25

*United Mine Workers v. Gibbs*, 383 U.S. 715 (1966)…………………………………………4

28 U.S.C. § 1331…………………………………………………………………………3

Civil Rights Act of 1871 ("CRA 1983") 42 U.S.C. 1983………………3, 4, 15, 22, 23, 25

Civil Rights Act of 1964 ("CRA 1964") 42 U.S.C. 2000d…………………………3, 15, 26

CV 201……………………………………………………………………………………34

CV 1501 ………………………………………………………………………………34, 35

Title II of the Americans with Disabilities Education Act of 1990 ("ADA") 42 U.S.C. §
12131-12134…………………………………………………………3, 15, 16, 18, 19, 20, 26, 30

Title V Section 504 of the Rehabilitation Act of 1973 ("504") 29 U.S.C. § 794
………..…………………...2, 6, 7, 9, 10, 14, 15, 16, 17, 18, 19, 20, 21, 22, 25, 26, 30, 33

USBE Rule 277-217-3(3-4). …………………………………………………………30, 31

Utah Code 63G-7-101-401……………………………………………………………30

Utah Code 63G-7-202……………………………………………………………………32

Utah Code 63G-7-301………………………………………………………………30, 32

Utah Constitution Article I, Section 1………………………………………4, 16, 28, 29

Utah Constitution Article I, Section 7………………………………………4, 16, 28, 29

Utah Constitution Article X, Section 1……………………………………4, 16, 28, 29, 30

## JURISDICTION & VENUE

1. This Court has jurisdiction over this complaint pursuant to Title V Section 504 of the Rehabilitation Act of 1973 (504) 29 U.S.C § 794 (non-discrimination under federal grants and programs).

2. This Court has jurisdiction over this complaint pursuant to Title II of the Americans with Disabilities Act of 1990 (ADA) 42 U.S.C. § 12132-12134 (remedies, procedures, and rights of any person alleging discrimination on the basis of disability).

3. This Court has jurisdiction over this complaint pursuant to the Civil Rights Act of 1871 (CRA §1983) 42 U.S.C. 1983 (deprivation of rights secured by the Constitution).

4. This Court has jurisdiction over this complaint pursuant to the Civil Rights Act of 1964 (CRA 1964) 42 U.S.C. 2000d (prohibits discrimination based on protected classes).

5. This Court has subject matter jurisdiction over this complaint pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

6. The Court has supplemental jurisdiction pursuant to *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966) over the state claims arising out of following:

   a. Utah Constitution Article I, Section 1 (Inherent and Inalienable Rights: ensures that all persons have the interest and inalienable right to enjoy

4

and defend their lives and liberties…and petition for redress of grievances.)

    b.  Utah Constitution Article I, Section 7 (Due Process of Law: ensures that no person shall be deprived of life, liberty, or property without due process of law.)

    c.  Utah Constitution Article X, Section 1 (Guarantees a free and equal public education to the children of Utah.)

    d.  Common law torts of negligent infliction of emotional distress and intentional infliction of emotional distress.

7. This Court may grant the relief sought by Plaintiffs pursuant to 28 U.S.C §§ 2201-2202 (procedural safeguards).

8. This Court may grant the relief sought by Plaintiffs pursuant to 42 U.S.C. § 12133 (remedies, procedures, and rights of any person alleging discrimination on the basis of disability, includes attorney fees).

9. This Court may grant the relief sought by Plaintiffs pursuant to 42 U.S.C. § 1983 (civil action for deprivation of rights).

10. This Court may grant the relief sought by Plaintiffs pursuant to 29 U.S.C. § 794 (non-discrimination under federal grants and programs, attorneys fees).

11. This Court may grant the relief sought by Plaintiffs pursuant to 20 U.S.C. § 1415 (children with disabilities and their parents are guaranteed procedural safeguards for FAPE).

12. This Court may grant the relief sought by Plaintiffs pursuant to Rule 57 of the Federal Rules of Civil Procedure (declaratory judgment).

13. This Court may grant the relief sought by Plaintiffs pursuant to Rule 65 of the Federal Rules of Civil Procedures (injunction and restraining orders).

14. Venue in this judicial district is proper under 28 U.S.C. § 1391 in that this is the judicial district in which the Defendants resides, and this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

## SUMMARY

15. This complaint is being brought by Dennis and Sarah George on behalf of their minor child, Student, age 14, who is a student with a disability.  She has the following genetic, life threatening, medical conditions that will be lifelong: Dysautonomia; Central, Obstructive, and Mixed Sleep Apnea (awake and asleep); Tachycardia; Bradycardia; Loeys-Dietz Syndrome; Mast Cell Deactivation Disorder; Asthma; Irritable Bladder; Temperature Intolerance; and Migraines.

16. This complaint pertains to events which occurred in the Davis School District (DSD), which is located at 465 South 400 East in Salt Lake City, UT 84111.  DSD is a public school district that is required to follow federal and state laws and which functions as a Local Education Agency (LEA).

17. Student has had Healthcare and 504 Plans for many years since her diagnoses. Her plans include a trained aide who observes her reactions, listens to alarms on her monitoring device, and takes appropriate actions based on multiple medical emergencies that may arise.

18. DSD has rejected information and medical needs articulated by Student's medical providers, in writing, on the following dates: 9/21/2015 (Dr. Sankanju), 5/4/2016 (Dr. Colby), 5/5/2016 (Dr. Hutchinson), 4/7/2020 (Dr. Green), 6/14/2021, 6/30/2021, 8/20/2021, 8/24/2021, 9/2/2021, 10/11/2021, 8/8/2022 (Faxed 8/9/2022), and 1/9/2023.

19. In layperson terms, Student's conditions cause her breathing to stop, her heart rate to drop very low or to rise very high, and unexpected allergic reactions to occur.  Student's doctor, Dr. Michael Green, has described one of Student's conditions for DSD as follows, "As apnea is caused by her brain failing to send the signal to breathe to her lungs, she is not in the proper mental state to react to the apnea monitor while she is experiencing apnea."  For this reason, he expressly asserts, and has written same to DSD, that, "It would be detrimental for [Student] to not have a trained aide with her throughout her time at school."

20. On February 7, 2023, DSD unilaterally decided that Student was no longer in need of a paraprofessional to respond to her multiple medical diagnoses.  The service is set to discontinue on Monday, February 27, 2023.

21. Parents and their attorney objected to the removal of the trained paraprofessional at the meeting with DSD on February 7, 2023.

22. Parents have filed previous complaints with the Office of Civil Rights (OCR) on November 3, 2021 and again on February 1, 2022.  OCR's investigations are ongoing.

23. In a meeting on Tuesday, February 7, 2023, DSD presented evidence based on a daily trackers that parents had not received.  Charts created from this data indicated that Student did not need paraprofessional support to manage her disabilities.  However, parents were immediately able to demonstrate that the data collected from these trackers did not match the charts provided by DSD and key dates were omitted during which Student's health was poor.  Additionally, at the conclusion of the meeting, Student's medical 504 aide (BC) was asked if she believed Student needed her services.  BC replied in the affirmative.  DSD refused to include her comments in the meeting notes, insisting her remarks came after the meeting had concluded.

24. DSD complained that Student's Smart Monitor 2 provided by her physician, was not appropriate for her age.  The Smart Monior 2 is FDA approved for pediatrics and adults.  DSD suggested Student wear an Apple Watch to track her vitals.  Parents pointed out that an Apple Watch is not FDA approved.  The Smart Monitor 2 has a number of different alarms, responsive to the specific medical emergency being experienced by Student.  A trained paraprofessional must

know which alarm is sounding and how to respond appropriately.  Regardless of how often the paraprofessional is providing life-saving interventions, the interventions are a matter of life and death.  At this time, DSD has stated that they will discontinue all paraprofessional services on 2/27/2023.  This will put Student's life in immediate danger as she becomes incapacitated through cessation of breathing, reduction of heart rate, and excessively high heart rate.  Each medical emergency requires a different response that can only be administered by a properly trained staff member.

25. Additionally, DSD continues to insist that they have the legal right to administer epinephrine to Student regardless of her doctor's recommendations.  Utah Law has authorized schools to carry epinephrine in the event of an anaphylactic allergic creation.  In Student's case, this could cause an aortic aneurysm.  The district nurse insists that she has the right to dose Student regardless of parent directions, stating that a medical provider would need to block this action through written instructions.

26. On several occasions this school year, Student has participated in extracurricular activities without a trained aide.  DSD has claimed that her faculty advisor can act in this capacity.  However, the advisor is frequently in a separate location during the activities and is not trained to respond to the diverse medical emergencies Student might experience.

27. In September of 2022, Student's parents met with a DSD nurse and signed a 504

Plan and two different Health Care Plans.  In October of 2022, the Risk

Management Administrator, Scot Zigich, unilaterally decided to void these plans

and rewrite them.  Referring to her previous Health Care Plan, Mr. Zigich stated,

"If not signed by you on Friday, we would deactivate the 2020 Health Care Plan

and institute a Health Care Plan without your signature that instructs our staff to

call 911 when [Student] has a health or medical concern."  This has been the

only response DSD has been willing to provide from 10/4/22 to the present.

Plaintiffs' retained the services of an attorney and have been working since that

time to come to an agreement with DSD, to no avail.  In the 2/7/2023 meeting,

DSD presented a Health Care Plan that does not provide an aide and does not

consider the detailed recommendations from Student's physicians.

28. DSD engaged in retaliation against a disabled person for engaging in a protected

activity when they:

    a.  Knew Plaintiffs' engaged in a protected activity of reporting to OCR

        through the following:

        i.  OCR letter in June of 2021, Case 8-22-1056,

        ii.  Parent report to Midori Clough on 10/8/2021,

        iii.  Parent email to Michael Martini, Dan Linford, Steve Loveland, Scot

            Zigler, Ben Onofrio, and Reid Newey on 11/5/2021 indicating they

            had filed an OCR complaint, and

      iv.  Parent email to Dan Linford, Steve Loveland, Scot Zigler, Ben Onofrio, Reid Newey and others on 1/4/2022 indicating they had filed an OCR complaint.

b.  Student experienced an adverse action caused by DSD when they:

      i.  Made a false report to the Division of Child and Family Services in January of 2022 complaining that parents were seeking too much medical help for Student,

      ii.  Eliminated the appropriate Health Care Plan and 504 Plan created in September of 2022,

      iii.  Threatened to eliminate all services except calling 911,

      iv.  Prescribed a woefully inadequate replacement for Student's Smart Monitor 2, which is prescribed for people of all ages, ignoring doctor's specific instructions, and

      v.  Withdrew paraprofessional services.

c.  There is a causal connection between the adverse action and the protected activity.  DSD does not have a legitimate non-discriminatory reason for refusing to heed physician guidance on Student's medical needs.  Their secret trackers and the data produced therefrom are a pretext for discrimination by DSD.  Their false statements to the Office of Civil Rights (OCR) are further evidence of adverse action.

i.  In OCR's letter of 12/23/2022 regarding Case 8-22-1056, OCR provides DSD's explanations for Plaintiffs' earlier complaints of restricting communication with Student's paraprofessional, blocking parent training of the paraprofessional, and banning of parents from observing Student's classrooms.  DSD provided a number of false statements in their defense, including the following:

1. False Statement by DSD: Plaintiffs asked for staff's personal contact information.  *Truth: Parents provided their own personal contact information to the staff member.*

2. False Statement by DSD: Parents covertly entered the school without permission.  *Truth: Parents were acting as Student's aide for one of her classes.  Principal threatened to ban parents from the school after they complained that an aide could not hear her monitor alarms.*

3. False Statement by DSD: Parents were not told that they could not communicate with staff.  *Truth: Parents **were** told they could not communicate with staff both verbally and in writing.*

4. False Statement by DSD: Parents attempted to train a staff member without going through the correct channels.  *Truth: Parent had contacted Steve Loveland on multiple occasions*

*trying to set up staff training.  The multiple paraprofessionals were untrained.*

ii. In OCR's letter of 12/23/2022 regarding Case 8-22-1178, OCR provides DSD's explanations for the Plaintiffs' earlier complaints of retaliating for filing the earlier complaint and reporting parents to DCFS for fabricating Student's disabilities and medical records. These medical records were sent directly from the doctors' offices and a DSD nurse had direct communication with Student's physician until this privilege was abused in August of 2021.  DSD provided a number of false statements in their defense, including the following:

1. False Statement by DSD: DSD could not have discriminated against Student by filing the DCFS report on 1/20/22 at 9:00 AM, as they only received the OCR complaint at 4:00 PM on the same day.  *Truth: Parents notified DSD three times before the DCFS report that an OCR complaint was being or had been filed.  DSD confirmed in writing on 1/5/22 that they were aware parents had filed an OCR report.*

2. False Statement by DSD: DSD employee's report to DCFS included alleged "red-flag" concerns that parents were removing the student from school and extracurricular

13

activities when an aide was not present, that student was losing seat time in class, and that this was isolating the student from social interactions. *Truth: When an aide is not present, Student's life is in danger. Band, math class, and lunch with friends are irrelevant if Student is dead. Additionally, DSD was making Student go to the office each time she had a medical issue. This decision certainly caused Student to miss school, lose seat time, and be isolated her from social interactions. Reporting to the office, rather than quietly getting help from an aide, also caused Student additional embarrassment regarding her medical issues and exacerbated a known leg injury.*

3. False Statement by DSD: DSD claimed the Smart Monitor 2 was not working correctly or appropriately for Student. DSD stated that if the leads were misplaced, they would, "place the student at risk of a device failure and a medical crisis." *Truth: The Smart Monitor 2 is FDA approved for pediatrics and adults. Plaintiffs received their directions for using the device directly from medical professionals. It is regularly maintained by Intermountain Health Care. It is replaced almost yearly. Dr. Green has clarified how the monitor is to*

*be used in his letter to DSD.  DSD admits Student would*

*have a medical crisis if not for the device.  Parents deny that*

*that they were unable to explain to OCR when Student last*

*saw a doctor or how the device is meant to function.*

*Parents rely on directions from medical professionals for*

*how to use and maintain the device.  DSD has received this*

*same information.*

29. Parents attempted to engage in mediation with DSD as part of a complaint under IDEA.  When it was determined that Student did not qualify for Special Education services, the district cancelled the mediation, despite Plaintiffs' request to continue under 504.  Both mediation and Due Process are available to students under 504.  Parents were able to verify that DSD policy, as found online, contains similar information.  DSD has refused to honor these policies.

30. DSD is not in compliance with OCR's directives in Case 8-22-1056.  Parents have never been provided with procedural due process rights.  No adaptive behavior assessment has been conducted.  The school was provided with an updated letter from Dr. Green in January of 2023, which was not properly considered.  It is wholly inappropriate for a school team to be determining whether a physician prescribed Smart Monitor 2 is adequate for tracking Student's life-threatening conditions.  DSD complains the beeping, which

indicates a life-threatening emergency for Student, is disruptive to the learning environment.

31. A Notice of Claim has already been sent to DSD Superintendent.

## ARGUMENT

32. Plaintiffs allege that DSD has violated four primary and overlapping pieces of federal legislation: (1) Title V Section 504 of the Rehabilitation Act of 1973 ("504") 29 U.SC. § 794, (2) Title II of the Americans with Disabilities Education Act of 1990 ("ADA") 42 U.S.C. § 12131-12134, (3) Civil Rights Act of 1871 ("CRA §1983") 42 U.S.C. 1983, (4) Civil Rights Act of 1964 ("CRA 1964") 42 U.S.C. 2000d.

33. Congress enacted legislation in 1986 (the Civil Rights Equalization provision) to permit private suits in federal courts against state entities under Title VI, Title IX, Section 504, and the Age Discrimination Act.  Suits under ADA were already authorized by law.

34. Plaintiffs allege that DSD has violated the following sections of the Utah State Constitution: Article I, Section 1, Article I, Section 7, and Article X, Section 1.

35. Utah courts have held that the Utah Government Immunity Act does not apply to claims alleging state constitutional violations.  *State v. Tiedemann*, 2007 UT 49, 183, 162 P.3d 1106.

36. Plaintiffs allege that DSD has violated the following common law torts: negligent

    infliction of emotional distress and intentional infliction of emotional distress.

### FIRST CAUSE OF ACTION
**Title V Section 504 of the Rehabilitation Act of 1973 (504) 29 U.S.C. § 794**
**+ Americans with Disabilities Act Amendments Act of 2008 (ADA AA)**
Defendant: Davis School District

37. Section 504 provides, "No otherwise qualified individual with a disability in the

    United States…shall, solely by reason of her or his disability, be excluded from

    the participation in, be denied the benefits of, or be subjected to discrimination

    under any program or activities receiving Federal financial assistance."

38. 504 protects persons with disabilities and provides remedies, procedures, and

    rights to any person alleging discrimination on the basis of a disability through

    OCR's administrative processes or through the Federal court system.  A person

    may at any time file a private lawsuit against a school district.  Section 504

    regulations do not contain a requirement that a person file a complaint with OCR

    and exhaust his or her administrative remedies before filing a private lawsuit.

39. DSD is required to comply with 504.

40. Student is a qualified individual with a disability as defined by 34 C.F.R.

    104.3(j)(2)(i), because she has physical and mental impairments of the

    neurological, musculoskeletal, special sense organs, respiratory, including

speech organs, cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine systems which substantially limits one or more life activities, as defined by 34 C.F.R. 104.3(j)(2)(ii) specifically: caring for one's self, walking, seeing, hearing, speaking, breathing, working, performing manual tasks, and learning.

41. Student is being denied a free appropriate public education (FAPE).  Under 504, FAPE consists of the provision of regular education and related aids and services designed to meet the student's individual educational needs as adequately as the needs of nondisabled students are met.

42. Defendants violated 504 when they:

    a. Denied Student the opportunity to participate in or benefit from public education in the DSD.  Student cannot attend school or extracurricular activities without a properly trained aide who is able to perform life saving techniques specific to each of her multiple medical disabilities.

    b. Denied Student access to programs, services, benefits, or opportunities to participate as a result of physical barriers.  Student's condition is degenerative.  When, for example, her joints are painful, she requires mobility assistance from an aide.  Additionally, Student cannot be alone in a restroom.  A breathing emergency lasting more than five minutes and unattended by an aide could prove fatal.  Her very presence in the school is prohibited when an aide is not provided.

43. Defendants discriminated and retaliated against Student, for example, when they:

    a.  Acted intentionally when they refused to consider the many written communications from Student's doctors specifying her diagnoses and what must be done when each produces a medical emergency and rejected a request from parents to meet to discuss what assessment data may still be needed and how it would be collected, as recommended by OCR.

    b.  Acted with willful misconduct when they revoked Student's aide, called DCFS in retaliation for advocating for Student, unilaterally cancelled her signed 504 and Health Care Plans, and refused to provide any medical service except to call 911.

    c.  Acted with a deliberate indifference towards Student's rights as a qualified disabled person.

**SECOND CAUSE OF ACTION**
**Title II of the Americans with Disabilities Act of 1990 (ADA)**
**42 U.S.C. § 12132 *et seq.***
**+Americans with Disabilities Act Amendments Act of 2008 (ADA AA)**
Defendant: Davis School District

44. ADA (42 U.S.C. § 12132 *et seq.)* prohibits discrimination against individuals with disabilities in state and local government services, programs, and activities, including public schools.

45. ADA extends the antidiscrimination prohibition of the 504 to all actions of state and local governments.

46. The Americans with Disabilities Act Amendments Act of 2008 (ADA AA) was passed by Congress in response to Supreme Court decisions that had too narrowly interpreted the ADA's definition of a disability.  "Congress intended that the scope of the ADA be broad and inclusive."  154 Cong. Rec. S8342, S8345 (daily ed. Sept. 11, 2008) (statement of the Managers).

47. ADA protects persons with a disability from retaliation, harassment, and restrictions from programs and physical accessibility and creates a cause of action as a remedy.  42 U.S.C. § 12131-12134.

48. ADA defines disability as a physical or mental impairment that substantially limits a major life activity, (2) a record of such an impairment, or (3) being regarded as having such an impairment.  42 U.S.C. § 12102(1).

49. Student is a qualified individual with a disability as defined by 42 U.S.C. § 12102, because she has physical and mental impairments of immune system, normal cell growth, and digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions, which substantially limit one or more life activities, as defined by 28 C.F.R. § 35.104, specifically: caring for one's

self, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.

50. The ADA AA clarified that mitigating measures (ie: medications, assistive devices, or learned behavioral or adaptive modifications) that an individual may use to eliminate or reduce the effects of an impairment cannot be considered when determining whether a person has a substantially limiting impairment. 42 U.S.C. § 12102.

51. The ADA AA specifically clarified that an individual who performs well academically by obtaining positive grades in school can still be substantially limited in activities such as learning and thinking. This differs from the standard under the Individuals with Disabilities Education Act (IDEA) that a disability must require specialized instruction for learning. ADA and 504 require only that the impairment impact any major life activity. The school must assess what is needed to ensure that student has an equal opportunity to participate in the school's programs.

52. Defendants violated ADA when they:

   a. Denied Student the opportunity to participate in or benefit from public education in the DSD. Student cannot attend school or extracurricular activities without a properly trained aide who is able to perform life saving techniques specific to each of her multiple medical disabilities.

21

b.  Denied Student access to programs, services, benefits, or opportunities to participate as a result of physical barriers.  Student's condition is degenerative.  When, for example, her joints are painful, she requires mobility assistance from an aide.  Additionally, Student cannot be alone in a restroom.  A breathing emergency lasting more than five minutes and unattended by an aide could prove fatal.  Her very presence in the school is prohibited when an aide is not provided.

c.  Refused to participate in mediation.

d.  DSD failed to outline any system for procedural safeguards that detailed the process parents and guardians should take to challenge the decisions made by the school.

e.  From October 2022 to February 2023, plaintiffs disagreed with the unilateral withdrawal of the 504 and Healthcare Plans which resulted in the school only committing to call 911 when Student had a medical emergency.  Dozens of emails trying to reverse this decision failed to result in any change for more than 100 days.  The was no review procedure.  There was no mediation procedure.  There was no due process procedure.  The school had an affirmative duty to tell parents about this system and afford access to the system.  (Interestingly, a call to the Utah State Board of Education 504 educator indicated that the state

does not provide mediation or due process services.  She indicated it

would fall to the district to arrange these review processes.)

53. Defendants discriminated and retaliated against Student, for example, when

they:

    d.  Acted intentionally when they refused to consider the many written

communications from Student's doctors specifying her diagnoses and

what must be done when each produces a medical emergency and

rejected a request from parents to meet to discuss what assessment data

may still be needed and how it would be collected, as recommended by

OCR.

    e.  Acted with willful misconduct when they revoked Student's aide, called

DCFS in retaliation for advocating for Student, unilaterally cancelled her

signed 504 and Health Care Plans, and refused to provide any medical

service except to call 911.

    f.  Acted with a deliberate indifference towards Student's rights as a qualified

disabled person.

### THIRD CAUSE OF ACTION
**Civil Rights Act of 1871 (CRA §1983) 42 U.S.C. 1983**
Defendant: Davis School District

54. Civil Rights Act of 1871 ("CRA 1983") 42 U.S.C. 1983 creates a cause of action for "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State…subjects, or causes to be subjected, any citizen of the United States… to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…" (42 U.S.C. 1983 9.3).

55. CRA §1983 does not provide civil rights.  It provides an individual the right to sue state government employees and other acting "under color of state law" for civil rights violations.

56. Defendants deprived Plaintiffs of their federal constitutional and statutory rights by failing to provide Student with the educational and public service accommodations and modifications mandated by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.   *Gonzales v. Ysleta Independent School District,* 996 F.2d 745 (5th Circuit 1993) found that a 1983 claim against a school district for supervisory failures by action or inaction demonstrate deliberate indifference to the student's constitutional rights.  *Meyers v. Cincinnati Board of Education*, 18-3974 (6th Cir. 2020) found that in a 1983 case it was reasonably foreseeable that a child would be harmed when a school was aware of a student being harmed, but did nothing to prevent the harm.  The behavior of the DSD school employees in unilaterally withdrawing Student's aide

shows a conscious disregard or indifference to a known risk of harm to the child. *Id*.

57. DSD violated clearly established law in an objectively unreasonable manner which amounted to intentional discrimination. *Doe v. Taylor Independent School Dist.*, 975 F.2d 137 (5th Cir. 1992) concluded that public school officials can be held personally liable if the plaintiff establishes that (1) the defendant learned of facts or a pattern of inappropriate behavior pointing plainly towards the conclusion that the student was at serious risk, (2) the defendant showed deliberate indifference toward the constitutional rights of the student by failing to take action that was obviously necessary to prevent or stop the harm, and (3) such failure caused a constitutional injury to the student.

   a. Here, Student's doctors have repeatedly provided clear, written evidence that Student requires an aide to mitigate death.

   b. School and district personnel have persisted in making unilateral decisions that showed a deliberate indifference to Student's health and well being.

   c. Removing Student's aide has caused a constitutional injury to the student. If she cannot attend school, she cannot exercise her freedom of speech (First Amendment), DSD has taken her property interest of an education (Fifth Amendment), DSD is punishing plaintiffs in a cruel and unusual manner for making complaints to OCR (Eighth Amendment), and plaintiffs

       have been denied their due process and equal protection rights (Fourteenth Amendment).

    d.  Student's liberty interests also include the right of an individual to acquire useful knowledge and enjoy privileges commonly associated with the pursuit of happiness under the law. *Ingram v. Wright*, 430 U.S. 651 (1977).

    e.  The state has a special relationship with students because they are compelled to attend public school and are thus owed an affirmative duty of protection. Plaintiffs have begged school officials to take appropriate action and provide live saving services to Student.

58. CRA §1983 (42 U.S.C. 1983) also makes qualified immunity generally available to state and local officials. Qualified immunity balances two important interests: (1) the need to hold public officials accountable when they exercise power irresponsibly and (2) the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. *Pearson v. Callahan*, 494 F.3d 891 (10th Cir. 2009). To overcome qualified immunity, a plaintiff must show that the official violated a statutory or constitutional right and the right was clearly established at the time of the conduct. *Saucier v. Katz*, 533 U.S. 194 (2001). Here, Defendants exercised power irresponsibly when they failed, for example, to honor the 504 and Health Care Plans created in September of 2022. Removing the aide in February 2023 has denied Student participation in school programs,

services, and activities under ADA.  DSD failed to provide a safe school

environment.  It denied Student the right to liberty and happiness under CRA

§1983.  Defendants, as educators, knew or reasonably should have known that

violation 504, ADA, and CRA §1983 would violate Student's constitutional rights.

Defendants did not perform their duties reasonably and should not be granted

the shelter of qualified immunity.


### FOURTH CAUSE OF ACTION
**Title VI of the Civil Rights Act of 1964 (CRA 1964) 42 U.S.C. 2000d**
Defendant: Davis School District

59. Title VI of the Civil Rights Act of 1964 (CRA 1964) prohibits exclusion from

participation in, denial of benefits of, and discrimination under federally assisted

programs on grounds of race, color, or national origin.  42 U.S.C. 2000d.

60.  A local educational agency of the Elementary and Secondary Education Act of

1965 is specifically included as a "program or activity" under CRA 1964.  42

U.S.C. 2000d-4a(2)(B).

61.  CRA 1964 has been expanded to cover all harassment in school programs and

activities.  "In the education arena, Title VI's protections apply to all public

elementary and secondary schools and colleges and universities - public and

private – that receive federal financial assistance.  Its protections extend to all

aspects of these institutions' programs and activities."

https://www2.ed.gov/about/offices/list/ocr/frontpage/pro-students/race-origin-pr.html

62. Subsequent federal laws and regulations prohibited discrimination against individuals or groups of individuals because of particular traits.  For example, protections for religion and sex were added in 1965 by President Lyndon B. Johnson.  President William Clinton added sexual orientation in 1998.  President Barak Obama added gender identity in 2014.  Federal law strictly prohibits blatant discrimination against protected classes.

63. Here, Plaintiffs' have been the subject of harassment and discrimination by DSD over several years.  Plaintiffs cannot fully fathom what they have done to deserve such ire from DSD.  They hope discovery will reveal if the disparate treatment is based on their inclusion in a protected class.

**FIFTH CAUSE OF ACTION**
**Utah State Constitution**
Defendant: Davis School District

64. DSD has violated the following sections of the Utah State Constitution:

    a.  Article I, Section 1: Inherent and Inalienable Rights

    b.  Article I, Section 7: Due Process of Law, and

    c.  Article X, Section 1: Free and Equal Public Education for the Children of Utah.

65. Utah courts have held that the Utah Government Immunity Act does not apply to claims alleging state constitutional violations. *State v. Tiedemann*, 2007 UT 49, 183, 162 P.3d 1106.

66. This court should apply state law to the state constitutional claims, as the guarantees of life, liberty, redress, and due process issue from the Utah State Constitution, independent from the federal guarantees in the United States Constitution. *Id*. Although the state and federal constitutions have similar language, they should be analyzed as independent protections. *Batley v. Bayles*, 2002 UT 58, T11 n. 2, 52 P.3d 1158.

67. Here, DSD committed a flagrant violation of Student's constitutional rights under the Utah Constitution. Her rights to enjoy and defend her life, liberty, and property were taken without due process. She cannot now attend school without the protection of an aide. Student has the right to redress her grievances, but DSD has provided no means to do so, short of a civil suit. She has a right to a free and equal public education, but she cannot enter the environment unattended for fear for her life. The Utah Constitution provides citizens the right to "communicate freely their thoughts and opinions," but Plaintiffs have been punished by DSD for doing so. Article 1, Section 1.

68. The Utah Supreme Court has found that the Free and Equal Public Education Clause of the Utah Constitution (Article X, Section 1) and the Due Process Clause of the Utah Constitution (Article I, Section 7) are self-executing.

*Spackman v. Bd of Educ.*, 2000 UT 87, 16 P.3d 533, 534.  A self-executing constitutional clause is one that can be judicially enforced without implementing legislation.  *Id*.  In the *Spackman* case, the Utah Supreme Court applied common law to the state constitution claims to justify the right of "individuals to access remedies of money damages for violations of their individual rights."  *Id*. at 538.  Additionally, the Court determined that an appropriate remedy could also be fashioned by the court, even if no specific remedy is mentioned.  *Id*.  The court determined plaintiffs are entitled to monetary damages for a violation of the Utah Constitution if defendants (1) committed a flagrant violation of plaintiff's constitutional rights, (2) existing remedies do not redress his injuries, and (3) equitable relief was and is inadequate to protect plaintiff's rights or redress his injuries.  *Id*. at 538-539. Interestingly, the court has found only five current or former constitutional provisions <u>not</u> to be self-executing.  *Id*. at footnote 3.

69. Existing remedies do not exist to punish DSD for repeatedly lying to OCR or leaving student without a Health Care Plan for more than 100 days.

70. To protect Plaintiffs' rights and redress their injuries, monetary damages for violations of their rights are appropriate in this case.

71. The Utah Constitution Article X, Section 3 vests general control and supervision over public education in the Utah State Board of Education (USBE).  Subsection 53E-3-401(4) allows USBE to make rules and execute USBE's duties and

responsibilities under the Utah Constitution and state law.  Subsection 53E-3-501(1) directs USBE to adopt rules regarding services for persons with disabilities.  Title 53E, Chapter 7, Part 2, Education of Children with Disabilities, requires USBE to adopt rules regarding educational services to students with disabilities.  USBE Rule 277-750-2 incorporates the Special Education Rules Manual (USBE-SER), updated July 2020.  According to these rules, USBE is responsible for ensuring: (1) that the requirements of the ADA are carried out, and (2) that each education program for students with disabilities administered within the State is under the general supervision of and meets the education standards of the USBE.  Thus, ADA is a specialized program, incorporated by the state under its laws, that falls under the rules for Utah public education that falls under the jurisdiction of the USBE that is given authority by the Utah Constitution.

72. Utah Code 63G-7-101-401 makes state government immunity generally available to governmental entities and employees.  Governmental immunity is waived under the contract provision of Utah Code Ann. 63G-7-301(1)(a).  Defendants are liable under several types of contracts in this case.

    a. 504 and Health Care Plans are contracts between the school district and the individual child and her family.  Once the 504 has been created, the school is legally required to comply with its terms, providing all services, equipment, and programs to which it has committed.

b.  The Utah State Board of Education ("USBE") grants licenses for

educators.  This is a contract with the public that teachers licensed in Utah

will meet specific standards, including the following: Educators will (1) take

prompt and appropriate action to prevent harassment or discriminatory

conduct toward a student, (2) supervise a student appropriately, and (3)

take action to protect a student from any known condition detrimental to

that student's physical health, mental health, safety, or learning.  Rules

277-217-3(3-4) and 277-217-3(5).  One could claim that the USBE should

be the only enforcer of the duties and responsibilities of educators.

However, public policy requires that educators be held accountable for

significant failures for breach of their teaching licenses that injure public

school children.

73. Defendants should not be entitled to Governmental Immunity based on waivers

to that immunity for willful misconduct, breach of contract, and state constitutional

violations.


### SIXTH CAUSE OF ACTION
**Common Law Tort: Negligent Infliction of Emotional Distress & Intentional**
**Infliction of Emotional Distress,**
Defendants: Davis School District

74. Utah Code 63G-7-301 waives government immunity as to any claim regarding any injury proximately caused by a negligent act or omission of an employee committed within the scope of employment 2(i).

75. Utah Code 63G-7-202(3)(c)(i) of the Governmental Immunity Act also authorizes a "civil action or proceeding" against the entity and the employee whose act or omission gives rise to the claim if the employee acted or failed to act through willful misconduct.  Section 1(b) provides "immunity from suit is waived by this chapter and consent to sue is granted and liability of the entity shall be determined as if the entity were a private person."  This consent to sue pertains to an injury caused by an act or omission that occurs during the performance of an employee's duties, within the scope of employment, and under color of authority § (3)(a) when the employee acted or failed to act through willful misconduct § (3)(c)(i).  Here, Defendants' willful misconduct committed as state employees caused injury to Student.

76. The current version of the Utah Government Immunity Act, particularly 63G-7-101(4), specifies that assault, battery, libel, slander, deceit, interference with contract rights, infliction of mental anguish, or violation of civil rights are waivers to immunity.  As already discussed, governmental immunity is waived under the contract provision of Utah Code Ann. 63G-7-301(1)(a), consistent with this interpretation.  The Utah Government Immunity Act is intended to protect the

school from unforeseen wrongdoing by employees, not to protect the school from intentional and systemic employee wrongdoing.

77. Student is required to attend school under Utah's Compulsory Education rules. While on school grounds during school hours, and even in afterschool clubs, she is in the care and custody of DSD.

78. Parents and school nurse had reviewed the medical information provided and signed 504 and Health Care Plans for Student in September 2022.  The next month, Scot Zigler and Benjamin Onofrio unilaterally overruled the decision of Student's team, placed her in imminent harm of a medical emergency in which 911 was the only option, blatantly lied to OCR, and did so in retaliation for Plaintiffs' rightful complaints to OCR.

79. Intentional infliction of emotional distress requires (1) outrageous and intolerable conduct by defendants, (2) defendants intended to cause emotional distress or acted with reckless disregard of the probability of causing emotional distress, and (3) plaintiffs suffered severe or extreme emotional distress that was caused by defendants' conduct.  CV1501 IIED.

80. Here, Scot Zigler and Benjamin Onofrio are guilty of outrageous and intolerable conduct.  Student is a physically fragile early teen with life-ending medical diagnoses.  Plaintiffs carry the burden of this knowledge and the daily precautions and actions required to keep Student alive.  Zigler and Onofrio have punished and threatened and deprived Student of services specifically deemed

essential by her medical providers.  Then they lied about it.  They have committed an act of discrimination with the intent to cause suffering.  Plaintiffs have suffered severe and extreme emotional distress as a result of Defendants' conduct.  Parents have struggled for years with DSD as they repeatedly threaten to cut services to Student.  It is a fight that requires constant vigilance.  It is exhausting.  It creates a level of worry and anxiety that no one should experience, especially the parents of a child who will likely succumb to her illnesses during their lifetime.

81. DSD is at fault for Plaintiffs' injuries.  (CV 201 – Fault).  Fault means whether Student was harmed and, if so, whether anyone is at fault for that harm.  If more than one person is at fault, fault must be allocated among them.  Fault means any wrongful act or failure to act.

82. Defendants were negligent in allowing Student to be injured.  (CV 1501 – negligence).  Negligence means that a person did not use reasonable care.  We all have a duty to use reasonable care to avoid injuring others.  Reasonable care is simply what a reasonably careful person would do in a similar situation.  A person may be negligent in acting or in failing to act.  The amount of care that is reasonable depends on the situation.  Ordinary circumstances do not require extraordinary caution.  But some situations require more care because a reasonably careful person would understand that more danger is involved.  Defendants were negligent.  This negligence was the cause of Plaintiffs' harm.

83. Student has been damaged and claims general and special damages, the amount of which to be determined at trial.

## JURY DEMAND

84. In accordance with Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

1. ORDER and declare Defendants are violating Student's rights under Title V Section 504 of the Rehabilitation Act of 1973 (504) 29 U.S.C § 794. Judgment for general damages and special damages arising therefrom.

2. ORDER and declare Defendants are violating Student's rights under Title II of the Americans with Disabilities Act of 1990 (ADA) 42 U.S.C. § 12132-12134. Judgment for general damages and special damages arising therefrom.

3. ORDER and declare Defendants are violating Student's rights under the Civil Rights Act of 1871 (CRA §1983) 42 U.S.C. 1983. Judgment for general damages and special damages arising therefrom.

4.  ORDER and declare Defendants are violating Student's rights under the Civil Rights Act of 1964 (CRA 1964) 42 U.S.C. 2000d.  Judgment for general damages and special damages arising therefrom.

5.  ORDER and declare Defendants are violating Student's rights under Utah Constitution Article I, Section 1.  Judgment for general damages and special damages arising therefrom.

6.  ORDER and declare Defendants are violating Student's rights under Utah Constitution Article I, Section 7.  Judgment for general damages and special damages arising therefrom.

7.  ORDER and declare Defendants are violating Student's rights under Utah Constitution Article X, Section 1.  Judgment for general damages and special damages arising therefrom.

8.  ORDER and declare Defendants are violating Student's rights under common law torts of negligent infliction of emotional distress and intentional infliction of emotional distress.  Judgment for general damages and special damages arising therefrom.

9.  ORDER and GRANT the relief sought by Plaintiffs pursuant to 28 U.S.C §§ 2201-2202 (procedural safeguards).  Judgment for general damages and special damages arising therefrom.

10. ORDER and GRANT the relief sought by Plaintiffs pursuant to 42 U.S.C. § 12133 (remedies, procedures, and rights of any person alleging discrimination on the basis of disability, includes attorney fees).

11. ORDER and GRANT the relief sought by Plaintiffs pursuant to 42 U.S.C. § 1983 (civil action for deprivation of rights).

12. ORDER and GRANT the relief sought by Plaintiffs pursuant to 29 U.S.C. § 794 (non-discrimination under federal grants and programs, attorneys fees).

13. ORDER and GRANT the relief sought by Plaintiffs pursuant to 20 U.S.C. § 1415 (children with disabilities and their parents are guaranteed procedural safeguards for FAPE).

14. ORDER and GRANT the relief sought by Plaintiffs pursuant to Rule 57 of the Federal Rules of Civil Procedure (declaratory judgment).

15. ORDER and GRANT the relief sought by Plaintiffs pursuant to Rule 65 of the Federal Rules of Civil Procedures (injunction and restraining orders).

16. ORDER and GRANT punitive damages to the extent allowed by law.

17. Permanently ENJOIN Defendants, their successors in office, agents, employees, and assigns, and all persons acting in concert with them from denying Plaintiffs and similarly situated students with the school-based services they need to enjoy equal educational opportunity to their nondisabled peers and to receive appropriate educational programs and services under 504, ADA, CRA §1983, CRA 1964, Utah Constitution, and common law.

38

18. ORDER DSD to make decisions for Student based on the appropriate medical advice of her physicians as necessary for FAPE.

19. ORDER DSD to reverse the decision of 2/7/2023 to terminate Student's aide as necessary for FAPE.

20. ORDER DSD to provide Student with all necessary related services and equipment necessary for FAPE.

21. AWARD Plaintiffs their reasonable attorney fees and costs, with interest, pursuant to 42 U.S.C. § 12205, 29 U.S.C. 794a, and any other applicable provision of prevailing law.

22. GRANT any other relief which is necessary and appropriate to protect the federal and state rights of Plaintiffs and similarly situated individuals.

23. GRANT any other relief which the Court deems just and equitable under the circumstances.

Dated this 27th day of February 2023.

/s/Amy L Martz
Amy L Martz
MARTZ LAW
*Attorney for Petitioners*

**CERTIFICATE OF SERVICE**

I certify that on the 27th day of February 2023, I served a copy of this Complaint

on the following parties by the method indicated:

*via E-mail*

**NAME**
Joan Andrews, ESQ, #7803
Fabian Vancott
95 South State Street, Suite 2300
Salt Lake City, UT 84111
(801) 531-8900
jandrews@fabianvancott.com
*Attorney for Defendants*

**NAME**
Benjamin Onofrio, ESQ, #14477
Davis School District
45 East State Street
Farmington, UT 84025
(801) 402-5261
bonofrio@dsdmail.net
*In House Attorney for Defendants*

*/s/Amy L Martz*
Amy L Martz
MARTZ LAW
*Attorney for Petitioners*