IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DENNIS GEORGE and SARAH GEORGE, for and on behalf of minor child, I.G.,<br>        Plaintiffs,<br><br>v.<br><br>DAVIS SCHOOL DISTRICT,<br>        Defendant. | **MEMORANDUM DECISION AND ORDER DENYING MOTION FOR A TEMPORARY RESTRAINING ORDER**<br><br>Case No. 2:23-cv-00139-JNP-DBP<br><br>District Judge Jill N. Parrish |

Before the court is a motion filed by Dennis and Sarah George (respectively Mr. and Mrs. George; collectively "Plaintiffs") on behalf of their minor child, I.G., for a temporary restraining order ("TRO"). ECF No. 2. Plaintiffs request the court enjoin Defendant Davis School District ("DSD") from discontinuing the provision of a paraprofessional health care aide to I.G. *Id.* On March 20, 2023, the court heard oral argument on the motion for a TRO and took the matter under advisement.

A dispositive issue in this case is whether Plaintiffs have exhausted their administrative remedies. At the conclusion of the hearing, the court ordered the parties to submit affidavits describing the precise administrative remedies requested, the response, and the current status of the remedies. ECF No. 25. During the hearing, Plaintiffs' counsel indicated that *Luna Perez v. Sturgis Pub. Sch.,* 143 S. Ct. 859, 862 (2023), which was then pending before the United States Supreme Court, would change the exhaustion requirement. *Luna Perez* was released the day after the court held its TRO hearing. The court then requested that parties submit supplemental briefing

explaining the impact of *Luna Perez* on this case.[1] Having considered the written briefs, exhibits

filed, oral argument, affidavits, and the supplemental briefing, the court DENIES Plaintiffs' request

for a TRO.

**FINDINGS OF FACT**

1. I.G. is a student attending ninth grade in the Davis School District. Asthma Action Plan Ex.

   C, ECF No. 24 at 13.

2. I.G. was diagnosed at three years old with several medical conditions, including

   dysautonomia, apneas, arrythmias, Loeys-Dietz syndrome, and mast cell activation

   syndrome. ECF No. 31 at 2–5.

3. Since I.G. started attending school in the DSD in September 2015, I.G. has had both an

   Individual Healthcare Plan ("IHP") and a 504 Plan. ECF No. 2 at 2. The plans include the

   provision of a trained paraprofessional healthcare aide who observes I.G., listens to I.G.'s

   medical monitoring device, and responds to any medical emergencies that arise. *Id.*

---

[1] The supplemental briefs were due by March 31, 2023. On May 7, 2023, Plaintiffs filed an additional brief providing the court with updates on how the situation had developed since the temporary restraining order hearing had concluded on March 20, 2023. *See* Pls.' Req. for Decision on TRO & Update 4, ECF No. 32 ("Minor child has now missed forty-four (44) days of school."). The additional brief and the accompanying exhibits did not provide the court with any pertinent additional information.

On May 19, 2023, DSD filed a motion to strike or disregard the additional brief and exhibits contained therein. Def.'s Obj. to & Mot. to Strike 8, ECF No. 34. Alternatively, DSD argues that "if the pleading and exhibits are not stricken, Plaintiffs' counsel must be disqualified for taking on the role of both advocate and witness, as prohibited by Rule 3.7 of the Utah Rules of Professional Conduct." *Id.* at 7.

First, DSD's motion to strike is MOOT because the court did not rely on the additional brief or any of the exhibits contained therein. The court does not address DSD's disqualification argument at this juncture, because as DSD itself concedes, this argument has not been properly briefed. Def.'s Reply 9, ECF No. 38. To be clear, as the court has reserved ruling on the merits of the disqualification argument, DSD may raise this argument again through proper motion practice.

4.  In addition to a health care aide, Plaintiffs request the following accommodations: "access to a power outlet for her equipment/monitor"; "unlimited access to personal cell phone to seek help, advice, and to report emergency interventions for tracking; "additional time for tests"; "breaks during tests, as needed"; "private testing location to reduce distractions from alarms for other students"; "[a]dditional time for assignments [] (2 days, 7 days, 10 days?)"; "modifi[cation of] physical education requirements"; "immediate access to restroom without restriction"; "accommoda[tion of] absences for healthcare, appointments, and adjust attendance policy"; "[m]edication, drink, and snack administration"; "avoid[ance of] potential allergens such as smoke, scents, and fumes and/or make arrangements for [I.G.'s] class to meet away from these allergens"; alternative notetaking tools, "accomodat[ion of] alternative forms of writing such as text to speech, scribe, oral responses, and digitally recorded answers"; permission to "leave class early and arrive a few minutes late, as needed, to avoid hallway traffic and permit restroom use"; and "use of the elevator" and "faculty or health room restroom with wheelchair access." ECF No. 31 at 4–5.

5.  To comply with the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, DSD adheres to the administrative procedures set forth in 34 C.F.R. §§ 300.507–300.508 and Utah State Board of Education Special Education Rules ("USBE Rules"), Section IV.G, H; Andrews Aff., ECF No. 27 ¶ 5.

6.  In addition to filing a lawsuit and pursing administrative relief, parties who encounter disability-based discrimination may also file a complaint with the Office for Civil Rights ("OCR"). Dep't Educ., *About OCR*, https://www2.ed.gov/about/offices/list/ocr.  OCR

enforces Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("§ 504"), and

Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12132 ("ADA"). *Id.*

7.  Sometime prior to October 8, 2021, DSD informed Plaintiffs that it intended to stop

providing I.G. with a health care aide.

8.  A parent or legal guardian who "believes their student has been subjected to discrimination

based on an alleged violation of Section 504," may file a site level complaint. Davis School

District Policy and Procedures 11IR-101 Section 504 Student Accommodations, 504

Grievance Procedures (Nov. 21, 2017) Ex. 11, ECF No. 22-1 at 4. A parent or guardian

who is unsatisfied with the site level resolution may file a complaint with Midori Clough,

DSD's District 504 Coordinator, who will then investigate. *Id* at 4–8.

9.  On October 8, 2021, Plaintiffs contacted Midori Clough. Compl. at 10, ECF No. 1. Ms.

Clough sent Mr. George an email later that day stating the following:

> Mr. George,
>
> I read the email stating that you would like to file a grievance against
> Kaysville Junior High. My understanding is that there are four areas
> of concern that you would like investigated:
>
> 1. Removal of [I.G.'s] aide
>
> 2. Disregard for [I.G.'s] health plan
>
> 3. Violation of [I.G.'s] 504 plan
>
> 4. Not providing [I.G.] with access to her education.

Email from Midori Clough, District 504 Coordinator, to Dennis George, Plaintiff (Oct. 8,

2021, 11:21 AM) Ex. 1, ECF No. 28-1.

10. Mr. George informed Ms. Clough that he did not want her to proceed further with the

investigation as he did not believe it would be unbiased, and instead, would file a complaint

with OCR. *See* Email from Dennis George, Plaintiff, to Midori Clough, District 504 Coordinator (Oct. 8, 2021, 3:21 PM) Ex. 1, ECF No. 28-1 ("I appreciate your willingness to investigate this matter. However, in discussing this matter with my counsel, it is more appropriate to have a neutral, impartial agency investigate this matter and [sic] will file with OCR. If you have any questions or concerns, please direct them to Michelle Marquis . . . .").

11. On October 13, 2021, DSD confirmed that Mr. George had withdrawn his internal complaint. Onofrio Aff., ECF No. 28 at ¶ 4.

12. On November 3, 2021, Plaintiffs filed a complaint with OCR. *See* Letter from Thomas M. Rock, Supervisory Gen. Attorney, U.S. Dep't Educ. Denver Office Civil Rights, to Reid Newey, Superintendent Davis School District (Dec. 23, 2022) (concerning OCR Case Number 08-22-1056) Ex. 3, ECF No. 22-1. The complaint contained three allegations:

    a. First, DSD had "failed to adequately reevaluate the Student during the fall of 2021, by failing to consider information from a variety of sources . . . and unilaterally changing the Plan." *Id.* at 1.

    b. Second, DSD "failed to implement the Student's existing 504 Plan by failing to properly train staff . . . ." *Id.*

    c. Third, DSD retaliated against Plaintiff for "advocating on behalf of the Student by restricting his communication with District staff." *Id.* at 2.

13. On January 20, 2022, a DSD employee reported Plaintiffs to the Utah Department of Child and Family Services (DCFS). Letter from Thomas M. Rock, Supervisory Gen. Attorney, U.S. Dep't Educ. Denver Office Civil Rights, to Dennis George, Plaintiff (Dec. 23, 2022) (concerning OCR Case Number 08-22-1178) Ex. R, ECF No. 24 at 3. Around January 28,

2022, an investigator from DCFS contacted Plaintiffs to investigate a complaint that Plaintiffs "were getting too much medical help for the Student or making up medical stuff for the Student causing her harm." *Id.* at 2. On February 1, 2022, Plaintiffs filed another complaint with OCR where Plaintiffs alleged that DSD had retaliated against Plaintiffs for filing the prior complaint with OCR by "reporting [Plaintiffs to DCFS] for allegedly fabricating the Student's disabilities and medical records." *Id.*

14. On August 5, 2022, Mr. George signed a series of medical authorization forms for the 2022-2023 academic year. Asthma Action Plan Ex. C, ECF No. 24; School Medication Authorization Form Ex. F, ECF No. 24. On both these forms, Mr. George declined to authorize DSD with the ability to contact I.G.'s medical providers. *See id.* ("I DO NOT ~~hereby~~ authorize the exchange of medical information regarding my child's treatment plan between the licensed medical provider and Davis School District.").

15. On October 4, 2022, Scott Zigich (DSD Director of Risk Management) informed Mr. George that he had not signed I.G.'s 504 Health Care plan, and that if the plan was not signed by that Friday, the school would implement a health care plan "that instructs our staff to call 911 when [I.G.] has a health or medical concern." Email from Scott Zigich, DSD Director Risk Management, to Dennis George, Plaintiff (Oct. 4, 2022, 11:44 AM) Ex. G, ECF No. 24.

16. DSD "prohibits discrimination and harassment on the basis of . . . disability . . ." Davis School District Policy and Procedures 11IR-100 Nondiscrimination Policy and Complaint Procedures, Policy Statement of Non-Discrimination (Aug. 2, 2022) Ex. 3, ECF No. 28. A parent or guardian who believes that they have been discriminated against may file a discrimination complaint with the Office of Equal Opportunity ("OEO"). *Id.* On November

7, 2022, Plaintiffs filed a harassment complaint against Scott Zigich and the Kaysville Junior High School administration with the OEO. Letter from Carey Long, OEO District Coordinator, Davis School District, to Dennis and Sarah George, Plaintiffs (Mar. 20, 2023) Ex. 4, ECF No. 28. Plaintiffs alleged that Mr. Zigich had "retaliated against the George family by unilaterally retracting an appropriate healthcare plan that was made by the parents and nurse signed in Aug. 2022" and the administration had engaged in retaliation by overriding the prior 504 plan. *Id.* OEO concluded that there was insufficient evidence that either Mr. Zigich or Kaysville Junior High had discriminated against or harassed Plaintiffs. *Id.*

17. On December 23, 2022, OCR issued its findings.

   a. OCR did not rule on DSD's alleged failure to conduct an adequate reevaluation of I.G. in fall 2021. Prior to the conclusion of OCR's investigation, DSD had agreed to "conduct a full Section 504 reevaluation of the Student" by February 15, 2023 and reimburse Plaintiffs for the cost of visiting Dr. Green's office on June 22, 2021. Davis School District Resolution Agreement OCR Case Number 08-22-1056 Ex. 2, ECF No. 22-1.

   b. OCR concluded that there was insufficient evidence to support Plaintiffs' claims that DSD had inadequately trained I.G.'s paraprofessional health aides and that DSD had retaliated against Plaintiffs. Letter from Thomas M. Rock, Supervisory Gen. Attorney, U.S. Dep't Educ. Denver Office Civil Rights, to Reid Newey, Superintendent Davis School District (Dec. 23, 2022) (concerning OCR Case Number 08-22-1056) Ex. 3, ECF No. 22-1.

    c.   With regards to the claim that DSD had reported Plaintiffs to DCFS in January

2022, OCR concluded that there was "insufficient evidence of pretext and therefore,

insufficient evidence of retaliation." Letter from Thomas M. Rock, Supervisory

Gen. Attorney, U.S. Dep't Educ. Denver Office Civil Rights, to Dennis George,

Plaintiff (Dec. 23, 2022) (concerning OCR Case Number 08-22-1178) Ex. R, ECF

No. 24 at 6.

18. On December 21, 2022, Plaintiffs emailed DSD concerning an IDEA eligibility meeting

for I.G. Email from Amy L. Martz, Plaintiffs' counsel, to Brett Sims, Principal, Kaysville

Junior High (Dec. 21, 2022, 9:57 AM) Ex. 4, ECF No. 22-1 at 7 ("It is essential that this

information be considered in discussion of her eligibility for special education on Friday,

January 6th at 8:45 AM. [I.G.] is expected to qualify [sic] Other Health Impaired under

IDEA. If so, there will be no need for a 504 meeting.").

19. On January 6, 2023, DSD held an IDEA meeting with Plaintiffs. Onoforio Decl., ECF No.

22-1 at 3. DSD concluded that I.G. had a disability, but that she was not eligible for special

education under the IDEA. *Id.*; *see also* Kaysville Junior High, Prior Written Notice of

Proposed Action (Feb. 7, 2023) ("Special education testing conducted during the 2022–23

school year, the team's determination based on the assessment data, and the team's decision

that [I.G.'s] disability does not require specialized instruction."). Plaintiffs did not contest

I.G.'s eligibility or pursue any other remedies related to I.G.'s IDEA determination. Onofrio

Decl., ECF No. 22-1 at 3.

20. A parent who disagrees with the district's determination of a student's IDEA eligibility can

file a due process complaint. *See* 34 C.F.R. § 300.507 ("A parent or a public agency may

file a due process complaint on any of the matters described in § 300.503(a)(1) and (2)

(relating to the identification, evaluation or educational placement of a child with a disability, or the provision of FAPE [free appropriate public education] to the child).”); USBE Rules § IV.G.

    a.  In addition to filing the complaint with DSD, “[t]he party filing a due process complaint must also forward a copy of the due process complaint to the USBE State Director of Special Education in person, by U.S. Mail, or by fax.” USBE Rules § IV.H; *see also* 34 C.F.R. § 300.508.

    b.  “Within 15 calendar days of receiving notice . . . [of the complaint], and prior to the initiation of a due process hearing, [the school district] must convene a meeting” . . . so that the [school district] has the opportunity to resolve the dispute that is the basis for the due process complaint.” USBE Rules § IV.J; 34 C.F.R. § 300.510.

    c.  “The party receiving a due process complaint must, within ten days of receiving the due process complaint, send to the other party a response that specifically addresses the issues raised in the due process complaint.” USBE Rules § IV.H; 34 C.F.R. § 300.508.

    d.  Once the due process complaint has been filed, the complainant is entitled to an impartial due process hearing. USBE Rules § IV.K.; 34 C.F.R. § 300.511.

    e.  “A decision made in a hearing is final, unless a party to the hearing appeals the decision to a civil action under 34 CFR § 300.516 and these Rules IV.Q.” USBE Rules § IV.N; 34 C.F.R. § 300.514.

    f.  “In any civil action, the court receives the records of the administrative proceedings; hears additional evidence at the request of a party; and, basing its

9

decision on the preponderance of the evidence, grants the relief that the court determines to be appropriate." USBE Rules § IV.Q; 34 C.F.R. § 300.516.

21.  On February 7, 2023, DSD conducted a 504-revaluation meeting for I.G and concluded that I.G. did not require a paraprofessional aide. Meeting Notes Ex. 2, ECF No. 27-2. DSD notified Plaintiffs that they intended to remove I.G.'s aide beginning on February 27, 2023. Kaysville Junior High, Prior Written Notice of Refusal of Proposed Action (Feb. 7, 2023) Ex. 8, ECF No. 22-1.

22. On February 27, 2023, Plaintiffs filed this complaint and a motion for an ex parte TRO. ECF Nos. 1 & 2.

23. This court heard oral argument on March 20, 2023. ECF No. 25.

## LEGAL STANDARD

Plaintiffs request a thirty-day TRO. ECF No. 2-1 at ¶ 4. However, "[t]emporary restraining orders can last no more than fourteen days . . . . When a temporary restraining order lasts longer than fourteen days, it becomes appealable as a preliminary injunction." *Tooele Cnty. v. United States*, 820 F.3d 1183, 1187 (10th Cir. 2016). Accordingly, the court treats Plaintiffs' motion as a request for a preliminary injunction.

"The requirements for a TRO issuance are essentially the same as those for a preliminary injunction order." *People's Tr. Fed. Credit Union v. Nat'l Credit Union Admin. Bd.*, 350 F. Supp. 3d 1129, 1138 (D.N.M. 2018). The plaintiff must establish the following four elements: "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest."*Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (internal quotation and citation omitted). "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted); *accord Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005) ("As a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal.") (citation omitted).

## ANALYSIS

Plaintiffs must demonstrate that they have a "strong likelihood of success on the merits" of their underlying claims to obtain a TRO. *McDonnell v. City & Cnty. of Denver*, 878 F.3d 1247, 1253 (10th Cir. 2018). Courts consider "the evidence plaintiff intends to present at trial" in evaluating the likelihood of success. *Id.* "Where a plaintiff seeks a preliminary injunction and

asserts multiple claims upon which the relief may be granted, the plaintiff need only establish a likelihood of success on the merits of one of the claims." *Roda Drilling Co. v. Siegal*, No. 07-cv-400-GFK-FHM, 2008 WL 4056229, at *5 (N.D. Okla. Aug. 11, 2008) (citation omitted).

During oral argument, Plaintiffs acknowledged that the motion for a TRO arises solely from the federal causes of action contained within the complaint: § 504, Title II of the ADA, 42 U.S.C. § 1983 ("§ 1983"), and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d.[2] Plaintiffs argue that DSD's decision to stop providing I.G. with an aide violates these statutes and request that the court order DSD to continue providing an aide for I.G.

"The Individuals with Disabilities Education Act . . . ensures that children with disabilities receive needed special education services." *Fry v. Napoleon Community Schools*, 580 U.S. 154, 157 (2017). Before bringing a claim under another federal statute, plaintiffs who seek disability related equitable relief must demonstrate that they have either complied with the IDEA or that the IDEA cannot provide the relief that they request. Specifically, Section 1415(l) of the IDEA provides:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C. 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C. 790 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the

---

[2] 42 U.S.C. § 2000d is irrelevant to this case. Plaintiffs did not provide, nor could the court find, any authority suggesting that people with disabilities are a protected class under 42 U.S.C. § 2000d. *See* 42 U.S.C. § 2000d (emphasis added) ("No person in the United States shall, on the ground of *race, color, or national origin*, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.").

same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l).

Plaintiffs argue that exhaustion is not required because I.G. does not qualify for the IDEA. In the alternative, Plaintiffs assert that they have exhausted their administrative remedies. The court first addresses the IDEA qualification argument, then addresses whether the remedies requested can be provided by the IDEA, and finally resolves the factual matter of administrative exhaustion.

## I.     I.G. May be Eligible for the IDEA

Plaintiffs argue that they do not need to exhaust the IDEA administrative remedies under subsections (f) and (g) of the IDEA because I.G. does not qualify as a child with a disability under the IDEA. Specifically, Plaintiffs assert that I.G. does not qualify because she does not require special education. Plaintiffs make two arguments in support of this assertion. First, during the IDEA eligibility meeting on January 6, 2023, DSD determined that I.G. did not require special education. Second, Plaintiffs assert that the accommodations that they request do not constitute special education. According to Plaintiffs, because I.G. does not qualify, the IDEA administrative procedures cannot provide Plaintiffs with the relief they request and therefore, exhaustion is not required.[3]

---

[3] Alternatively, Plaintiffs assert that even if § 1415(l) applies, they should be excused from exhaustion because exhaustion would be futile as the administrative procedures cannot provide them with the relief they request. *See Gallegos v. Adams Cnty. Sch. Dist. 14*, No. 17-CV-00306-CMA-NYW, 2017 WL 4236320, at *11 (D. Colo. Sept. 25, 2017) (quoting *Urban by Urban v. Jefferson Cnty. Sch. Dist. R–1*, 89 F.3d 720, 724 (10th Cir. 1996) ("Failure to exhaust the IDEA's administrative remedies is excused 'when administrative remedies would be futile, when they would fail to provide relief, or when an agency has adopted a policy or pursued a practice of

A.      DSD's Initial Determination that I.G. was Ineligible for the IDEA is not Final

Plaintiffs argue that because DSD initially determined that I.G. was ineligible for the IDEA,

administrative exhaustion is not required. *See* Onoforio Decl., ECF No. 22-1 at 3 ("[I.G.] was

found NOT eligible for special education under IDEA. Although student was found to have a

disability that adversely affected her educational performance, it was determined that she did not

require special education (defined as specially designed instruction) and as a result" ineligible for

the IDEA.). The court disagrees.

The Tenth Circuit has not had the opportunity to consider whether exhaustion is required

for a student who the school district has initially determined is ineligible for the IDEA, but

otherwise eligible for accommodations under § 504. *See Cudjoe v. Indep. Sch. Dist. No. 12*, 297

F.3d 1058, 1068 n.11 (10th Cir. 2002) ("This case differs, therefore, from one in which a student

is qualified under Section 504 of the Rehabilitation Act, but has been evaluated and found

ineligible under the IDEA."). When a student has not been evaluated under the IDEA, but could

obtain equitable relief under the statute, exhaustion is required. *See id.* at 1068 ("The fact that

Scottie has not been identified under the IDEA does not mean that relief for his claims is

unavailable under the statute. . . . Appellant could have filed a complaint with the District

pertaining to his identification or evaluation under the statute, and then utilized the IDEA's

procedural machinery . . ."). The court is not aware of any authority that has adopted "a bright line

rule that exhaustion is never required when a student is ineligible for services under the IDEA."

*McIntyre v. Eugene Sch. Dist. 4J*, 976 F.3d 902, 914 n.10 (9th Cir. 2020); *Laura A. v. Limestone*

---

generally applicability that is contrary to the law.'")). As this is effectively Plaintiffs' argument for
why § 1415(l) does not apply, the court does not address the argument separately.

*Cnty. Bd. of Educ.*, 610 F. App'x 835, 837 (11th Cir. 2015) ("[W]e need not decide whether IDEA exhaustion is required even if an individual is not eligible for relief under IDEA.")

Nor is the court convinced that such an approach is supported by statute. "As part of the bargain of providing children with educational rights and parents with procedural safeguards to protect those rights, Congress required that parents turn first to the statute's administrative framework to resolve any conflicts they had with the school's educational services." *Cudjoe*, 297 F.3d at 1064. The local educational agency ("LEA") is responsible for the initial IDEA eligibility evaluation. USBE Rules § II.F ("In conducting the evaluation, the LEA must: [u]se a variety of assessment tools and strategies to gather relevant functional, developmental, and academic information about the student . . . that may assist in determining . . . [w]hether the student is a student with a disability . . . ."); 34 C.F.R. § 300.304. In determining educational need, the LEA must "[d]raw upon information from a variety of sources, such as aptitude and achievement tests, parent or student who is an adult input, teacher recommendations, physical condition, social or cultural background, and adaptive behavior . . . ." USBE Rules § II.I; 34 C.F.R. § 300.306. Once this decision has been made, a parent who disagrees may file a complaint and is entitled to an impartial due process hearing to resolve this complaint. USBE Rules § IV; 20 U.S.C. § 1415(b)(6). The hearing officer makes a record of the findings. USBE Rules §§ IV.M; IV.Q. If the parent disagrees with the outcome, the parent may appeal the decision to the district court.[4] USBE Rules § IV.Q.

---

[4] Some states have a state level administrative appeals process under § 1415(g) that a plaintiff must exhaust before bringing a claim to court. However, there is no additional appeals process in Utah, so a plaintiff who is unsatisfied with the due process hearing determination may directly appeal the decision to the district court. USBE Rules § IV.Q.

The administrative process is important because it "permit[s] the exercise of agency discretion and expertise on issues requiring these characteristics," "allow[s] the full development of technical issues and a factual record prior to court review," "prevent[s] deliberate disregard and circumvention of agency procedures established by Congress," and "avoid[s] unnecessary judicial decisions by giving the agency the first opportunity to correct any error." *McQueen ex rel. McQueen v. Colorado Springs Sch. Dist. No. 11*, 488 F.3d 868, 873 (10th Cir. 2007) (internal quotation omitted). "If it is unclear whether the IDEA has the ability to remedy a particular injury, exhaustion is required to 'give educational agencies an initial opportunity to ascertain and alleviate the alleged problem.'" *Gallegos*, 2017 WL 4236320, at *11 (quoting *Padilla ex rel. Padilla v. Sch. Dist. No. 1 in City & Cnty. of Denver, Colo.*, 233 F.3d 1268, 1274 (10th Cir. 2000)). This process exists so courts do not "substitute their own notions of sound educational policy for those of the school authorities which they review." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 206 (1982).

DSD's initial determination that I.G. does not qualify for the IDEA is not final. Parents frequently challenge initial IDEA eligibility determinations. *See e.g.*, *Bd. of Educ. of Los Lunas Pub. Sch. v. Aragon ex rel Aragon*, No. CV 03-299 JH/LFG, 2004 WL 7338009, at *6 (D.N.M. Sept. 30, 2004) ("The fact that the Act places the onus on school authorities to inform parents of the IDEA rights demonstrates that Congress intended for parents to challenge their children's educational program and otherwise enforce the IDEA."). The IDEA has a built-in process to resolve these challenges. *See Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 404 (2017). ("The nature of the IEP process, from the initial consultation through state administrative proceedings, ensures that parents and school representatives will fully air their respective opinions on the degree of progress a child's IEP should pursue."). Plaintiffs effectively

16

ask the court to adopt DSD's nonbinding initial determination that I.G. is ineligible for the IDEA. The court declines to do so. Because an impartial hearing officer may reverse the district's initial determination, such an approach would be premature.

Moreover, adopting Plaintiffs' approach would render the IDEA hearing and appeals requirements meaningless. A parent who disagreed with the school district's determination that a child did not qualify for the IDEA could bring a challenge under a different federal statute in court to obtain the relief initially requested under the IDEA, thereby transforming the court into the initial decisionmaker. This subverts the entire purpose of having a hearing officer, who has technical expertise in the educational field, create a factual record for this court to review. *See Endrew F.*, 580 U.S. at 404 ("By the time any dispute reaches court, school authorities will have had a complete opportunity to bring their expertise and judgment to bear on areas of disagreement. A reviewing court may fairly expect those authorities to be able to offer a cogent and responsive explanation for their decisions . . . ."). Thus, the court concludes that DSD's initial determination that I.G. does not qualify for the IDEA neither conclusively establishes that I.G. is ineligible nor excuses Plaintiffs from administrative exhaustion.

B.     The Accommodations that Plaintiffs have Requested for I.G. may be "Special Education" Making I.G. Eligible for the IDEA

Alternatively, Plaintiffs argue that, based solely on the accommodations requested, it is evident that I.G. does not qualify for the IDEA. However, the court is not persuaded that the record "clear[ly] and unequivocal[ly]" establishes that I.G. does not require special education. *Schrier*, 427 F.3d at 1258. A "child with a disability" is "a child—[with a disability enumerated in section (3)(A)(i)] who, by reason thereof, needs special education and related services." 20 U.S.C. § 1401(3). Special education is "specially designed instruction . . . to meet the unique needs of a

17

child with a disability"; related services are the support services "required to assist a child with a disability to benefit from special education . . . ." 20 U.S.C. §§ 1401(29), 1401(26)(A)), *see Doe ex rel. Doe v. Brighton Sch. Dist. 27J*, No. 20-CV-00088-PAB-SKC, 2022 WL 4078230, at *6 (D. Colo. Sept. 6, 2022). If a child has an enumerated disability under § 1401(3)(a)(i), "but only needs a related service and not special education" then the child is not considered a "child with a disability" under the IDEA. 34 C.F.R. § 300.8(a)(2)(i).

"What it means to *need* special education and related services is not clear." *Lisa M. v. Leander Indep. Sch. Dist.*, 924 F.3d 205, 215 (5th Cir. 2019) (emphasis in original). "Experts often disagree on what the special needs of a handicapped child are, and the educational placement of such children is often necessarily an arguable matter." *Monahan v. State of Neb.*, 687 F.2d 1164, 1170 (8th Cir. 1982). "[C]ourts must consider the 'unique facts and circumstances' of each case, including 'parent input, and teacher recommendations, as well as information about the child's physical condition, social or cultural background, and adaptive behavior,' rather than only grades and test scores." *Lisa M.*, 924 F.3d at 216 (internal citation omitted).

A student who can be educated in "the regular classrooms of a public school with only minor accommodations" does not need special education under the IDEA. *Brighton Sch. Dist. 27J*, 2022 WL 4078230, at *6 (agreeing with the ALJ that "provision regarding coping strategies was a minor accommodation and does not qualify as a special education"); *see also C.M. ex rel. Jodi M. v. Dep't of Educ., State of Hawai'i*, 476 F. App'x 674, 677 (9th Cir. 2012) (providing "regular education classes with small enrollments designed to provide additional support [which] were open to many types of students who needed additional help" does not constitute special instruction). However, there is no consensus on how to determine the eligibility of students who require more substantial accommodations. *Compare Yankton Sch. Dist. v. Schramm*, 93 F.3d 1369, 1375 (8th

18

Cir. 1996) (interpreting "specially designed instruction in one-handed typing and shortened writing assignments, . . . mobility assistance services and provision of multiple text books . . ." as special education and related services under the IDEA) *with D.R. ex rel. Courtney R. v. Antelope Valley Union High Sch. Dist.*, 746 F. Supp. 2d 1132, 1142 (C.D. Cal. 2010) ("[M]odifications like extra time between classes and to turn in work, an extra set of textbooks, and permission to sit on a chair rather than the floor . . . were not special, individualized instructions . . . and therefore cannot constitute special education." ). If it is unclear whether the IDEA can provide a remedy, "we construe ambiguities in favor of exhaustion." *Carroll v. Lawton Indep. Sch. Dist. No. 8,* 805 F.3d 1222, 1227 (10th Cir. 2015).

It is not immediately clear to the court that Plaintiffs' educational requests for I.G. do not constitute special education. In addition to requesting a paraprofessional aide who constantly monitors I.G., Plaintiffs request the following:

> 3. Allow additional time for tests, as needed.

> 4. Allow breaks during tests, as needed.

> 5. Reduce distractions during test, as needed.

> 6. Private testing location to reduce distractions from alarms for other students.

> 7. Additional time for assignments. (2 days, 7 days, 10 days?)

> 8. Modify physical education requirements.

> 10. Accommodate absences for healthcare, appointments, and adjust attendance policy.

> 17. Leave class early and arrive a few minutes late, as needed, to avoid hallway traffic and permit restroom use.

ECF No. 31, 4–5. "Special education means specially designed instruction . . . to meet the unique needs of a child with a disability . . . ." 34 C.F.R § 300.39(a)(1).

> Specially designed instruction means adapting, as appropriate to the
> needs of an eligible child under this part, the content, methodology,
> or delivery of instruction [t]o address the unique needs of the child
> that result from the child's disability; and [t]o ensure access of the
> child to the general curriculum, so that the child can meet the
> educational standards within the jurisdiction of the public agency
> that apply to all children.

34 C.F.R. § 300.39(b)(3).

In *McIntyre*, the Ninth Circuit concluded that plaintiff's requests that the school district "(1) provide an alternative, quiet location to take exams, (2) provide extra time to complete exams, and (3) comply with an emergency health protocol" clearly did not constitute special instruction. 976 F.3d at 914. Here, Plaintiffs' requests are more ambiguous. For example, Plaintiffs request that DSD modify I.G.'s physical education requirements. If DSD needs to create a physical education class that is specifically tailored to I.G., this redesign may constitute specially designed instruction. *See Yankton*, 93 F.3d at 1375 (concluding that one-handed typing instruction and shortened assignments constitute special education). However, if I.G. requires only a minor modification, such as the ability to access asthma medication during physical education class, then the request does not rise to the level of special instruction. *See McIntyre*, 976 F.3d at 914 ("comply[ing] with an emergency health protocol" is not special instruction.). Similarly, it is difficult to pinpoint whether I.G.'s request for additional time to complete assignments constitutes special instruction. If I.G. only occasionally requires two additional days, the request may simply be a minor accommodation. But if I.G. requires ten additional days, and the teacher needs to create a new lesson plan or grading scale specifically for I.G., such a request may constitute specially designed instruction.

As further evidence of the ambiguity surrounding I.G.'s IDEA eligibility, Plaintiffs sent an email to DSD asserting that they believed that I.G. qualified for the IDEA and that the IDEA could

20

provide them with the remedies they now request. *See* Email from Amy L. Martz, Plaintiffs' counsel, to Brett Sims, Principal, Kaysville Junior High (Dec. 21, 2022, 9:57 AM) Ex. 4, ECF No. 22-1 at 7 ("It is essential that this information be considered in discussion of her eligibility for special education on Friday, January 6th at 8:45 AM. [I.G.] is expected to qualify Other Health Impaired under IDEA. If so, there will be no need for a 504 meeting."). Plaintiffs only "shift[ed] to judicial proceedings" after DSD's initial determination that I.G was ineligible for the IDEA. *Fry*, 580 U.S. at 173. *Cf. McIntyre*, 976 F.3d at 914 ("McIntyre did not otherwise seek or receive special education—or, for that matter, an IEP"); *Antelope Valley Union High Sch. Dist.*, 746 F. Supp. 2d at 1144 (internal citation omitted) ("In both [IDEA and court] proceedings, Plaintiff argued that she does not need special education and related services. Plaintiff also expressly stated that she filed the action 'to be certain that [Plaintiff had] exhausted all administrative remedies available under [IDEA]'"). In light of the lack of clarity concerning the remedies that Plaintiffs request and the high degree of certainty required to obtain a TRO, the court is not persuaded that, on the relief requested alone, the court can conclude that I.G. does not need special education.

To obtain a TRO, Plaintiffs are required to demonstrate that they are substantially certain to succeed on the merits of their claim. However, before Plaintiffs can proceed on their federal claims, they must demonstrate that they have either exhausted their administrative remedies or that exhaustion is not required. But DSD's nonbinding initial determination that I.G. is ineligible for the IDEA (which may be reversed by an impartial hearing officer) does not persuade the court that Plaintiffs are exempt from administrative exhaustion. Nor is the court convinced that the accommodations requested unequivocally do not constitute special education. Because I.G. may ultimately qualify for the IDEA, the court is not persuaded that Plaintiffs are exempt from administrative exhaustion.

## II.    Plaintiffs Request Equitable Relief that the IDEA can Provide

Having concluded that Plaintiffs have not unequivocally demonstrated that I.G. does not qualify for the IDEA, the court turns to whether the remedies that Plaintiffs request under § 504, § 1983, and the ADA are available under the IDEA. A claim is subject to the IDEA exhaustion requirement when it "seek[s] relief for the denial of a FAPE." *Fry*, 580 U.S. at 165; *Luna Perez*, 143 S. Ct. 859, 863–64 (quoting 20 U.S.C. § 1415) (explaining that while the first clause in section 1415(l) establishes that the IDEA does not restrict the ability of Plaintiffs to sue under other federal statutes, the second clause "carves out an exception to this rule" and "bars individuals from 'seeking relief' under other federal laws unless they first exhaust 'the procedures under subsections (f) and (g).'"); *Durbrow v. Cobb Cnty. Sch. Dist.*, 887 F.3d 1182, 1190 (11th Cir. 2018) ("[P]laintiffs cannot circumvent the IDEA's exhaustion requirement by suing for a FAPE deprivation under a different federal statute."). Administrative exhaustion is not required if the plaintiff exclusively seeks a remedy that cannot be provided by the IDEA, such as compensatory damages. *Luna Perez*, 143 S. Ct. 859, 863. However, if the IDEA can provide *any* of the remedies that plaintiff seeks, then administrative exhaustion of the IDEA procedures is required. *See id.* ("Under our view, for example, a plaintiff who files an ADA action seeking both damages and the sort of equitable relief IDEA provides may find his request for equitable relief barred or deferred if he has yet to exhaust §1415(f) and (g).").

Courts examine the "gravamen of the plaintiff's suit" to determine if the relief sought is the denial of a FAPE. *Fry*, 580 U.S. at 169–70 ("[T]hat examination should consider substance, not surface. The use (or non-use) of particular labels and terms is not what matters."). The Supreme Court has provided three "clue[s]" to assist courts with this determination. *Id.* at 171. "First could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public

facility that was not a school—say, a public theater or library?" *Id.* If so, then the claim probably

does not concern a FAPE. "[S]econd, could an adult at the school—say, an employee or visitor—

have pressed essentially the same grievance?" *Id.* Again, if so, the remedy requested is probably

for simple discrimination. Third, the fact that a plaintiff has previously pursued "IDEA's

administrative remedies will often provide strong evidence that the substance of a plaintiff's claim

concerns the denial of a FAPE . . . ." *Id.* at 174.

The court is convinced that Plaintiffs' claims concern the denial of a FAPE. Plaintiffs seek

a preliminary injunction ordering DSD to continue providing I.G. with a paraprofessional health

care aide. *See* Pls.' Proposed Order on Temporary Restraining Order, ECF No. 2-1. During oral

argument, Plaintiffs emphasized that the injunction is meant to allow I.G. to attend school. The

complaint states that Plaintiffs seek relief for the denial of a FAPE. *See* Compl., ECF No. 1 at ¶ 41

("Student is being denied a free appropriate public education (FAPE).").

Furthermore, the *Fry* clues indicate that Plaintiffs seek recourse for the denial of a FAPE.

Plaintiffs cannot request that another public facility provide I.G. with a paraprofessional aide. An

adult could not request that DSD provide a paraprofessional aide to enable the adult to visit the

school. The history of the proceedings also indicates that Plaintiffs seek relief for the denial of a

FAPE.[5] On December 21, 2022, Plaintiffs stated that "[i]t is essential that this information be

considered in discussion of her eligibility for special education on Friday, January 6th at 8:45

---

[5] In *Fry*, the Supreme Court limited the usefulness of IDEA proceedings to the "commencement of IDEA's formal administrative procedures" and not "more informal requests to IEP team members . . . ." 580 U.S. at 174 n.11. Here, the initial IEP eligibility meeting is a formal administrative step. USBE Rules § II.A; 34 C.F.R. §§ 300.109, 300.111. In context, the court interprets the email from Ms. Martz as more closely aligned with a formal rather than an informal request.

AM.[sic] I.G. is expected to qualify Other Health Impaired under IDEA. If so, there will be no need for a 504 meeting." Email from Amy L. Martz, Plaintiffs' counsel, to Brett Sims, Principal, Kaysville Junior High (Dec. 21, 2022, 9:57 AM) Ex. 4, ECF No. 22-1 at 7. Plaintiffs brought this action only after DSD determined that I.G. "did not qualify as a student protected under IDEA." Onofrio Aff. at 2, ECF No. 28; George Aff., ECF No. 29 ¶ 7. Although Plaintiffs could have appealed the eligibility decision by filing a complaint and requesting an impartial hearing, instead, they attempted to bypass this step by reversing their position and filing this case in federal court under different statutes. Thus, the court is persuaded that Plaintiffs seek relief for the denial of a FAPE.

### III.   As a Factual Matter, Plaintiffs Have Not Exhausted Their Administrative Remedies

Because Plaintiffs seek relief for the denial of a FAPE, they are required to exhaust their IDEA administrative remedies before bringing their claims. However, Plaintiffs have not exhausted their administrative remedies under the IDEA.[6]

Pursuant to USBE Rules § II.D. and 34 C.F.R. § 300.301, DSD "must conduct a full and individual initial evaluation to determine" a student's IDEA eligibility. USBE Rules § II.D.1. If parents disagree with the outcome of this meeting, they are entitled to file a complaint pursuant to

---

[6] During oral argument, DSD represented that Plaintiffs could satisfy their exhaustion requirement by either requesting a due process hearing under the IDEA or adhering to DSD's Section 504 Grievance procedure as provided in Policy 11IR-101. *See* Davis School District Policy and Procedures 11IR-101 Section 504 Student Accommodations, 504 Grievance Procedures (Nov. 21, 2017) Ex. 11, ECF No. 22-1 at 4. However, Plaintiffs are not required to exhaust the administrative remedies provided by § 504, the ADA, and § 1983 prior to bringing a suit under these statutes. § 504, the ADA, and § 1983 do not contain an administrative exhaustion requirement. The only administrative exhaustion requirement that applies in this case is the one under § 1415(l) of the IDEA, which requires Plaintiffs exhaust the *IDEA administrative procedures* before bringing a suit under another statute for relief. In other words, Plaintiffs must file an IDEA eligibility complaint and request a due process hearing pursuant to § 1415(f) before they can bring this case.

20 U.S.C. § 1415(b)(6). Once the complaint has been received, parties "shall have an opportunity for an impartial due process hearing . . . ." 20 U.S.C. § 1415(f); USBE Rules § IV. As Utah does not have an appeals procedure in place, parties unsatisfied with the results of the hearing may appeal the decision to federal district court. USBE Rules § IV.Q. Plaintiffs have not filed a complaint or requested a due process hearing pursuant to the IDEA. Andrews Aff. ECF No. 27 ¶ 5.

Plaintiffs do not contest the fact that they have not completed the procedures but ask the court to interpret their request for mediation during the February 7, 2023 504 reevaluation meeting as exhausting their IDEA obligations. ECF No. 31 at 12. A school that receives funding under the IDEA must provide mediation processes to assist parties in resolving "disputes involving any matter, including matters arising prior to filing a complaint . . . ." 20 U.S.C § 1415(e).

Plaintiffs requested mediation during the February 7 meeting. George Aff., ECF No. 29 at ¶¶ h–n. DSD responded that they did not believe that mediation was appropriate as it was not provided for under § 504[7] and they initially determined that I.G. was not eligible for the IDEA. DSD's refusal to provide mediation may establish that DSD is not in compliance with 20 U.S.C. § 1415(e), but it does not establish that Plaintiffs have exhausted their administrative remedies. While § 1415(e) requires that school districts provide mediation, it also provides that mediation must be voluntary and cannot be used "to deny or delay a parent's . . . right to a hearing on the . . . due process complaint . . . ." USBE Rules §IV.F; 34 CFR § 300.506. While Plaintiffs may have preferred to mediate rather than file a complaint, DSD's refusal to participate in *voluntary*

---

[7] Davis School District Notice of Parent and Student Rights Under Section 504 directly contradicts this position. *See* Davis School District Notice of Parent and Student Rights Under Section 504 (Aug. 18, 2022) Ex. 10, ECF No. 22-1 at ¶ 13 ("You have the right to . . . [r]equest mediation or an impartial due process hearing related to decisions regarding your child's identification, evaluation, educational program, or placement.").

mediation does not excuse Plaintiffs' failure to exhaust their administrative remedies. Plaintiffs did not file a complaint or request an impartial due process hearing. Thus, the court concludes that Plaintiffs have not exhausted their IDEA administrative remedies.

## CONCLUSION & ORDER

Because Plaintiffs have not established that they have exhausted their administrative remedies under the IDEA or that exhaustion is excused, Plaintiffs have not demonstrated the substantial likelihood of success necessary to prevail on a TRO. Accordingly, the court denies Plaintiffs' motion for a TRO. ECF No. 2.

DATED August 4, 2023

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge